Jerome WILLIAMS *v.* STATE of Arkansas

CA CR 98-42 986 S.W.2d 123

Court of Appeals of Arkansas
Division III
Opinion delivered February 24, 1999

*Linda Scribner,* for appellant.

*Winston Bryant,* Att'y Gen., by: *Vada Berger,* Asst. Att'y Gen., for appellee.

MARGARET MEADS, Judge. Appellant, Jerome Williams, was convicted in a bench trial of residential burglary and theft of property. The theft-of-property conviction was merged with the residential burglary conviction, and appellant was sentenced to ten years in the Arkansas Department of Correction. Appellant advances four arguments on appeal: (1) there was insufficient evidence to convict him of burglary; (2) there was insufficient evidence to convict him of theft of property; (3) he did not waive his right to a jury trial in accordance with Rule 31.2 of the Arkansas Rules of Criminal Procedure; and (4) he did not make a knowing and intelligent waiver of his right to a jury trial. We find no error; therefore, we affirm.

For evidence to be sufficient, there must be substantial evidence to support the verdict. *Mulkey v. State,* 330 Ark. 113, 952 S.W.2d 149 (1997). Evidence is substantial if it is forceful enough to compel a conclusion one way or the other beyond suspicion and conjecture. *Id.* In determining whether the evidence is substantial to support a conviction, the appellate court views the evidence in the light most favorable to the appellee, only considering the evidence that supports the guilty verdict. *Akins v. State,*

330 Ark. 228, 955 S.W.2d 483 (1997). All of the evidence, including that which may have been erroneously admitted, is considered in determining if there is sufficient evidence to sustain a conviction. *Burkett v. State*, 40 Ark. App. 150, 842 S.W.2d 857 (1992).

At trial, appellant's former girlfriend, Helena Douglas, testified that she and appellant ended their two-month relationship around December 3, 1996. Appellant had been living with Douglas in her apartment for two to three weeks prior to the end of the relationship, but the apartment was leased only in Douglas's name. After the couple had broken up, Douglas had difficulty removing appellant from her apartment and called the police for assistance on several occasions. According to Douglas, on December 9, 1996, the police escorted appellant away and told him not to return. That night, she informed the apartment complex that she wanted the locks to her apartment changed because appellant had a key to the first lock; the manager of the apartment complex informed her on December 10 that the locks were changed about 8:00 that morning. Douglas stated that she received a new key to her apartment and that she was the only person who had a key. Appellant did not have Douglas's permission to enter her apartment after he was escorted away on December 9.

Douglas stayed with a friend on December 9 because she was afraid to stay alone in her apartment. Upon returning to her apartment the evening of December 10, Douglas found that the door was locked, a window in her bedroom was broken, and her television, VCR, and microwave oven were missing. She testified that in 1994 she purchased all of the items that were missing and that she paid approximately $250 for the microwave, $200 to $230 for the television, and $194 for the VCR. Douglas also stated that appellant called her after the incident and admitted that he had taken her property. Appellant told her that if she would give him his "stuff," he would return the television and VCR.

Wayne Shipp testified that he was at Douglas's apartment on December 10 when appellant called, she handed him the telephone, he asked appellant why he had taken Douglas's things, and

appellant replied that it was his "shit." Officer Shonda Owens of the Little Rock Police Department testified that while investigating the burglary at Douglas's apartment, she listened in on a telephone conversation between appellant and Douglas and that appellant said that all he wanted was his stuff, and that if she had given him his belongings it never would have happened.

Appellant testified on his own behalf. He testified that he purchased the television and VCR and gave them to Douglas as an early Christmas present, and that he purchased the microwave when he and Douglas began dating. He admitted that he took the items but claimed they belonged to him. Appellant denied breaking the window and entering the apartment in that manner; rather, he asserted that he used his key to enter the apartment at 7:00 a.m. on December 10. At the close of the evidence, the trial judge found appellant guilty of residential burglary and theft.

For his first point on appeal, appellant contends that there was insufficient evidence to find him guilty of residential burglary. A person commits the offense of residential burglary if "he enters or remains unlawfully in a residential occupiable structure of another person with the purpose of committing therein any offense punishable by imprisonment." Ark. Code Ann. § 5-39-201(a)(1) (Repl. 1993).[1] Appellant acknowledges that he entered Douglas's apartment but claims there is no proof that he entered or remained unlawfully.

■ ■ Appellant contends that the court cannot rely on hearsay evidence that the locks were changed at 8:00 a.m. on December 10 and that police officers had instructed him on the night of December 9 "not to come back," because this was not competent evidence. We disagree. These answers were in response to questions asked by appellant's counsel, and appellant did not object to Douglas's answers at the time she gave them. Under the doctrine of invited error, one who is responsible for error cannot be heard to complain of that for which he was

---

[1] The statutes cited are the versions that were in effect at the time the offenses were allegedly committed.

responsible. *McGhee v. State*, 330 Ark. 38, 954 S.W.2d 206 (1997); *Morgan v. State*, 308 Ark. 627, 826 S.W.2d 271 (1992). Moreover, any objection to the answers on the basis of hearsay is not preserved for appeal because there was no objection in the trial court. *See Alexander v. State*, 335 Ark. 131, 983 S.W.2d 110 (1998).

■ ■ Further, hearsay evidence admitted without objection can constitute substantial evidence to sustain a conviction. *Darrough v. State*, 330 Ark. 808, 957 S.W.2d 707 (1997). A person "enters or remains unlawfully" when he "enter[s] or remain[s] in or upon premises when not licensed or privileged to do so." Ark. Code Ann. § 5-39-101(4) (Repl. 1993). Viewing the evidence in the light most favorable to the State, as we must, there is evidence that the apartment was leased in Douglas's name only; appellant was escorted away from the apartment on the night of December 9 and was told not to return; the locks were changed so that the key in appellant's possession would no longer work; and appellant did not have permission from Douglas to be in the apartment. This constitutes substantial evidence to support the finding that appellant unlawfully entered Douglas's apartment.

Appellant also asserts that there is insufficient evidence to support his conviction for theft of property. A person commits the offense of theft of property if he "[k]nowingly takes or exercises unauthorized control over . . . the property of another person, with the purpose of depriving the owner thereof[.]" Ark. Code Ann. § 5-36-103(a)(1) (Supp. 1995). Theft of property is a Class A misdemeanor when the value of the property is five hundred dollars or less. Ark. Code Ann. § 5-36-103(b)(4)(A). Value is the market value of the property at the time of the offense, or, if market value cannot be ascertained, the cost of replacing the property. Ark. Code Ann. § 5-36-101(11)(i) and (ii) (Repl. 1995).

■ ■ Appellant argues that the State did not establish that the VCR, television, and microwave had value and that there was no evidence he intended to take another person's property. We disagree. Douglas's testimony of the price she paid for the items taken by appellant was sufficient to establish the value of the prop-

erty. Although the preferred method of establishing value is through expert testimony, the price paid by an owner can be used to determine market value of property when the purchase is not too remote in time and bears a reasonable relation to present value. *Coley v. State*, 302 Ark. 526, 790 S.W.2d 899 (1990). The price paid for electronic equipment two years prior to a theft has been held to be adequate for purposes of establishing value. *Jones v. State*, 276 Ark. 116, 632 S.W.2d 414 (1982). Douglas's testimony alone is sufficient to establish that the items taken had some value, which was all that was necessary because there is no minimum value requirement for misdemeanor theft of property. *See O'Riordan v. State*, 281 Ark. 424, 665 S.W.2d 255 (1984).

 Similarly, there was sufficient evidence to prove that appellant intended to take property belonging to Douglas. A criminal defendant's intent or state of mind is rarely capable of proof by direct evidence and must usually be inferred from the circumstances of the crime. *Chase v. State*, 334 Ark. 274, 973 S.W.2d 791 (1998). Although Douglas's and appellant's testimony were conflicting, both versions support the finding that appellant took property belonging to Douglas. Douglas testified that she purchased the items herself approximately two years before the theft. Appellant testified, "I took my microwave that I had bought her when we first got together. I took my microwave. I took the VCR and the TV that I bought her for Christmas." Furthermore, Douglas testified that appellant told her that if she would give him his "stuff," he would return the VCR and television. This evidence supports the finding that appellant knowingly took Douglas's property.

Appellant's third and fourth points both concern his waiver of a jury trial. Appellant contends he did not waive his right to a jury trial in accordance with Rule 31.2 of the Arkansas Rules of Criminal Procedure and that he never made a knowing and intelligent waiver of his right to a jury trial. Arkansas Rule of Criminal Procedure 31.2 provides:

> Should a defendant desire to waive his right to trial by jury, he may do so either (1) personally in writing or in open court, or (2)

through counsel if the waiver is made in open court and in the presence of the defendant. A verbatim record of any proceedings at which a defendant waives his right to a trial by jury in person or through counsel shall be made and preserved.

A waiver is the intentional renunciation of a known right; it must be knowingly, intelligently, and voluntarily made, and such must be illustrated on the record or by the evidence. *McCoy v. State*, 60 Ark. App. 306, 962 S.W.2d 822 (1998). A person makes a knowing and intelligent waiver when he knows that the right exists and has adequate knowledge upon which to make an intelligent decision. *Duty v. State*, 45 Ark. App. 1, 871 S.W.2d 400 (1994).

We do not agree with appellant's arguments concerning waiver of a jury trial. Appellant contends that a document he signed entitled "Waiver of Jury Trial" should not be considered because the document was not filed-marked and that he did not make a knowing and intelligent waiver because the sentence range written on this form was incorrect and no fine was listed. The record contains a "Waiver of Jury Trial," signed by both appellant and his trial counsel. This document states that appellant has reviewed the information with his attorney, understands his rights, knows what he is doing, and voluntarily waives his right to a trial by jury.

With regard to the lack of file marks on this document, we know of no requirement that a written waiver be file-marked to be effective. Morever, the trial judge, court reporter, and circuit court clerk all certified that the record was a true and correct copy of all proceedings in the case. Matters properly incorporated in the original transcript of the appeal are accepted as conclusive. *Gill v. Burks*, 207 Ark. 329, 180 S.W.2d 578 (1944). In response to the argument regarding the sentencing range, we have been unable to find, nor has appellant cited us to any authority requiring that a defendant be apprised of the possible fine and sentence range prior to waiving his right to a jury trial.

Moreover, subsequent to the filing of appellant's brief, the State supplemented the record with the transcript of the April

17, 1997, pretrial hearing of this matter. At that hearing, in the presence of appellant, his counsel informed the trial court that appellant would waive a jury trial. The judge announced the fine and sentence range for the charged offenses. Appellant then told the judge that he understood the nature of the charges against him, as well as the possible penalties; that he had signed the form indicating he wanted to waive his right to a jury trial after his attorney had explained that he had this right; and that no one had forced him to waive this right. The dialogue between the trial judge and appellant at the pretrial hearing clearly indicates that appellant waived his right to a jury trial through his counsel, in writing, and personally in open court, all in accordance with Rule 31.2.

For the reasons stated herein, appellant's convictions are affirmed.

STROUD, J., agrees.

ROAF, J., concurs.

ANDREE LAYTON ROAF, Judge, concurring. I agree with the majority that these convictions must be affirmed, but write to express my concern that this case represents either the failure of the police to properly respond to a serious domestic situation, or an abuse of the criminal process.

Williams, a habitual offender, is certainly not a sympathetic figure, and the victim, Douglas, obviously regretted her foolhardy decision to allow him to move into her home after only a few weeks' acquaintance. His tenure there was short, they were not married, and when she wanted him to leave his refusal to do so was, at a minimum, unreasonable and ungentlemanly.

Douglas then attempted to enlist the Little Rock Police to help solve her dilemma, calling them some three to four times over a short period of time. According to Douglas, the police "escorted [Williams] away" several times, but told her, apparently in Williams's presence, that they "couldn't make him leave" the apartment because he lived there. However, Douglas testified at

trial that Williams had held her in her apartment against her will, berated and threatened her, and caused her to stay away from her apartment out of fear. These are allegations that, if communicated to police officers, should have led to Williams's arrest, or at least better advice and assistance than she got. Finally, perhaps after tiring of her calls, police made Williams once again leave on December 9, but this time "told him" not to return. The burglary and theft occurred the next day.

Douglas may or may not have known that pursuant to the Arkansas Domestic Abuse Act of 1991, Ark. Code Ann. §§ 9-15-103—9-15-211 (Repl. 1998), she could have attempted to secure an *ex parte* order of protection and had Williams removed from her home, without hiring an attorney. Of course, this would not have been as easy or convenient as simply calling the police, the course of action that she took. In any event, Williams solved Douglas's dilemma when he broke the glass of the apartment the next day and took, not merely his clothing, which she had already removed, but items that belonged to Douglas.

In this instance, the obvious questions of whether this was a domestic dispute, a civil property dispute, or a crime, were foreclosed by the breaking of Douglas's window. Had Williams lived there longer, had he had no criminal record, had he been, in essence, a more "sympathetic figure," perhaps these charges would not have been filed, and he would not have ended up with a felony-burglary conviction for breaking into what even the police had just days earlier characterized as his residence. Certainly, neither his nor any like criminal prosecutions should hinge on the length of the residency, whose name is or is not on a lease, failure to contribute to household expenses or, in this case, an admonition, finally, by the police to leave and "not come back." However, in this instance, it apparently does. For these reasons, I reluctantly concur in affirming Williams's convictions.